IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO.: 2:24-cv-16 ) ) |
| MCGOWAN REALTY, LLC, D/B/A REDSAIL PROPERTY MANAGEMENT, | ) ) ) |
| and | ) ) |
| ROBERT GORMAN, | ) ) |
| Defendants. | ) ) |

## CONSENT ORDER

### I. INTRODUCTION

1. This Consent Order resolves the allegations contained in the United States' Complaint that Defendants McGowan Realty, LLC, d/b/a RedSail Property Management ("RedSail"), and Robert Gorman (collectively "Defendants"), violated the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, when they imposed early termination charges on servicemembers who exercised their federally protected right to terminate their residential lease upon receipt of qualifying military orders.

2. Plaintiff is the United States of America, which has authority to enforce the SCRA pursuant to 50 U.S.C. § 4041(a).

3. Defendant RedSail is a company organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Newport News, Virginia.

       RedSail owns and manages residential homes in the Hampton Roads, Virginia, area, including Newport News, Hampton, Yorktown, Williamsburg, Virginia Beach, Norfolk, Chesapeake, Portsmouth, Suffolk, Poquoson, Carrolton, Smithfield, and Gloucester.

4. Defendant Robert Gorman ("Gorman") has owned a residence with an address of 7125 Arrington Street, Suffolk, Virginia 23435 ("Arrington Street Home") since on or about January 31, 2018. At all times relevant to the complaint, Defendant RedSail managed the rental of Defendant Gorman's Arrington Street residence.

5. The United States and the Defendants are referred to herein as the "Parties" and, where context requires, each, a "Party."

6. The Complaint alleges that since at least August 2018, Defendant RedSail has had a policy of imposing or attempting to impose the Virginia Residential Landlord and Tenant Act's ("VRLTA"), VA. CODE ANN.§ 55.1-1235(A), 35-mile limitation on servicemembers in the Hampton Roads area who were terminating their leases after receiving permanent change of station ("PCS") orders, thereby depriving them of the full scope of their rights under federal law, 50 U.S.C. § 3955.

7. The Complaint also alleges that from about April 18, 2022, through mid-July 2022, Defendant Gorman, through his agent, Defendant RedSail, imposed the VRLTA's 35-mile limitation on a servicemember who terminated his lease after receiving PCS orders, thereby depriving the servicemember of the full scope of his rights under federal law, 50 U.S.C. § 3955.

8. The Parties agree that the Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 50 U.S.C. § 4041(a).

9.  The Parties agree that, to avoid costly and protracted litigation, the claims against Defendants should be resolved without further proceedings or an evidentiary hearing. Therefore, as indicated by the signatures appearing below, the United States and Defendants agree to the entry of this Consent Order.

10. The effective date of this Consent Order will be the date on which it is approved and entered by the Court.

It is hereby ORDERED, ADJUDGED and DECREED:

## II. INJUNCTIVE RELIEF[1]

11. Defendants and their officers, employees, agents, representatives (including attorneys, contractors, and vendors), co-owners and family members shall not:

    a. impose or attempt to impose the Virginia Residential Landlord and Tenant Act's ("VRLTA"), VA. CODE ANN. § 55.1-1235(A), 35-mile limitation on a servicemember who lawfully terminates a residential lease under 50 U.S.C. § 3955;

    b. impose or seek to collect any early termination charge, including but not limited to the required repayment of any lease incentive or discount, from a servicemember or a dependent of a servicemember who lawfully terminates a residential lease under 50 U.S.C. § 3955; or

    c. deny early lease terminations under the SCRA to servicemembers who provide official military orders or a notification, certification, or verification from their commanding officer, as long as the servicemember otherwise qualifies for early lease termination under 50 U.S.C.§ 3955.

---

[1] Nothing in this Consent Order shall preclude the Defendants from offering greater protections to servicemembers than those afforded by the Consent Order or the SCRA.

3

### III. COMPLIANCE WITH THE SCRA AND
### SCRA POLICIES AND PROCEDURES

12. Within sixty (60) calendar days of the effective date of this Consent Order, Defendant RedSail shall amend its SCRA Policies and Procedures for Lease Terminations in compliance with 50 U.S.C. § 3955. These amended policies and procedures must include the following provisions:

    a. Defendant RedSail shall permit servicemembers to terminate residential leases upon their entry into military service or receipt of military orders (i) for a permanent change of station; or (ii) to deploy with a military unit, or as an individual in support of a military operation, for a period 90 days or more. Defendant RedSail shall also permit servicemembers to terminate residential leases upon their receipt of a stop movement order issued by the Secretary of a military service in response to a local, national, or global emergency, effective for an indefinite period or for a period of not less than 30 days, which prevents the servicemember or servicemember's dependents from occupying the lease. A servicemember's termination of a lease shall terminate any obligation a servicemember's dependent may have under the lease;

    b. The spouse or dependent of a servicemember-lessee on a lease may terminate the lease during the one-year period beginning on the date of the death of the servicemember-lessee, if the servicemember-lessee dies while in military service or while performing full-time National Guard duty, active Guard and Reserve duty, or inactive-duty training;

    c. If a servicemember-lessee incurs a catastrophic injury or illness during a period of military service or while performing covered service, the servicemember-lessee

    may terminate the lease during the one-year period beginning on the date on which the lessee incurs such injury or illness. If the servicemember-lessee lacks the mental capacity to contract or to manage his or her own affairs due to such injury or illness, the spouse or dependent of the lessee may terminate the lease.

d. Defendant RedSail shall accept terminations upon delivery of written notice of termination and a copy of qualifying military orders or a notification, certification, or verification from the servicemember's commanding officer to Defendant RedSail or its employees, agents, or representatives. Delivery of the written notice and orders or the commanding officer notification, certification, or verification may be accomplished by hand delivery, private business carrier, U.S. mail, or electronic means reasonably calculated to ensure actual receipt of the communication by Defendant RedSail (including electronic mail, facsimile, text message, or internet portal);

e. Defendant RedSail shall not deny or rescind its approval of an SCRA early termination request by an otherwise qualified servicemember based on the VRLTA's 35-mile limitation;

f. Defendant RedSail shall treat any residential lease termination as effective, regardless of the location of the new duty station, no later than 30 days after the first date on which the next rental payment is due and payable after the date on which the notice was delivered. Any rent amounts that are unpaid for the period preceding the effective date of the lease termination must be, if applicable, prorated. Rents or lease amounts paid in advance for a period after the effective date of the

termination of the lease shall be refunded to the lessee at the last known address of the lessee within 30 days of the effective date of termination;

g. Defendant RedSail shall not impose any early termination charge on a servicemember who terminates his or her lease based on receipt of qualifying military orders, including by requiring the servicemember to repay a rent concession or discount at termination;

h. Defendant RedSail shall not initiate or pursue a waiver of any of the lease termination rights provided under 50 U.S.C. § 3955, nor shall it enforce any such waiver that has been previously executed; and

i. Defendant RedSail shall revise its lease forms to ensure that all SCRA-related or early termination provisions comply with 50 U.S.C. § 3955 and to clarify that the VRLTA's 35-mile limitation does not apply to servicemembers who lawfully terminate a residential lease under 50 U.S.C. § 3955.

13. No later than sixty (60) calendar days after the effective date of this Consent Order, Defendant RedSail shall provide a copy of its amended SCRA Policies and Procedures, along with any revised lease forms, as required under Paragraph 12 to counsel for the United States. The United States shall respond to Defendant RedSail's proposed SCRA Policies and Procedures and any revised lease forms within thirty (30) calendar days of receipt. If the United States objects to any part of Defendant RedSail's revised SCRA Policies and Procedures or revised lease forms, the parties shall confer to resolve their differences. Defendant RedSail shall begin the process of implementing the SCRA Policies and Procedures and revised lease forms within ten (10) calendar days of approval or non-objection by the United States.

14. If, at any time during the term of this Consent Order, Defendant RedSail proposes to materially change or amend its SCRA Policies and Procedures described herein, it shall first provide a copy of the proposed changes to counsel for the United States. If the United States does not deliver written objections to Defendant RedSail within thirty (30) calendar days of receiving the proposed changes, the changes may be implemented. If the United States makes any objections to the proposed changes within the thirty (30) day period, the specific changes to which the United States objects shall not be implemented until the objections are resolved pursuant to the process described in Paragraph 13.

15. No later than thirty (30) calendar days after the effective date of this Consent Order, Defendant RedSail shall designate employees who have been specifically trained on the protections of the SCRA and who are responsible for the intake of and response to servicemembers' inquiries regarding the SCRA (the "designated employees"). Defendant RedSail shall ensure that it has a designated telephone number and electronic mail address at which servicemembers may reach a designated employee, who will address questions or concerns regarding the SCRA. Defendant RedSail shall also include a page or hyperlink on its website detailing eligibility for, and relief provided by, the SCRA, and providing the designated telephone number and electronic mail address to obtain SCRA relief or raise questions or concerns regarding such relief. The placement, format, and content of the page shall be subject to the non-objection of the United States.

16. Defendant Gorman shall comply fully with the requirements of 50 U.S.C. § 3955 and shall ensure that his agents (including Defendant RedSail and any other property management companies retained to manage rental properties he owns), employees,

representatives (including attorneys, contractors, and vendors), co-owners, or family members comply fully with the requirements of 50 U.S.C. § 3955, including, but not limited to, refraining from assessing rent concession chargebacks, other early termination fees, and additional rent against servicemembers who lawfully terminate their leases pursuant to Section 3955 of the SCRA.

17. Defendant Gorman, his agents (including Defendant RedSail and any other property management companies retained to manage rental properties he owns), employees, representatives (including attorneys, contractors, and vendors), co-owners, or family members shall not deny or rescind approval of an SCRA early termination request by an otherwise qualified servicemember based on the VRLTA's 35-mile limitation on a servicemember who lawfully terminates a residential lease under 50 U.S.C. § 3955.

### IV. TRAINING

18. Within sixty (60) calendar days of the United States' approval of the SCRA Policies and Procedures for Lease Terminations and revised lease forms pursuant to Paragraph 13, Defendant RedSail shall develop and provide to counsel for the United States proposed training materials related to compliance with the SCRA. The training shall include: (a) the requirements of the SCRA with respect to lease terminations; (b) Defendant's SCRA Policies and Procedures required pursuant to Paragraph 12; (c) the provisions of this Consent Order; and (d) the contact information for the employees described in Paragraph 15. Defendant RedSail shall provide to counsel for the United States the curriculum, instructions, and any written material included in the training. The United States shall have thirty (30) calendar days from receipt of these documents to raise any objections to Defendant RedSail's training materials, and, if it raises any, Defendant RedSail and the

|     | |
| --- | --- |
|     | United States shall confer to resolve their differences. In the event that Defendant RedSail and the United States are unable to do so, either Party may bring the dispute to this Court for resolution. |
| 19. | Within sixty (60) calendar days of the United States' approval of or non-objection to the SCRA compliance training pursuant to Paragraph 18, Defendant RedSail shall ensure that all employees involved in leasing operations and/or lease terminations have completed the SCRA compliance training. |
| 20. | During the term of this Consent Order, Defendant RedSail shall provide annual SCRA compliance training to all employees involved in leasing operations and/or lease terminations. Defendant RedSail shall also provide SCRA compliance training within thirty (30) calendar days of hiring any new employee who will be involved in leasing operations and/or lease terminations. |
| 21. | Defendant RedSail shall secure a signed statement in the form attached as Exhibit A from each employee at the trainings required by Paragraphs 19 and 20 acknowledging that they have received, read, and understand the Consent Order and the SCRA Policies and Procedures, have had the opportunity to have their questions about these documents answered, and agree to abide by them. For the duration of this Consent Order, copies of those signed statements shall be provided to counsel for the United States upon request. Defendant RedSail shall also certify in writing to counsel for the United States, on at least an annual basis, that the covered employees successfully completed the trainings required by Paragraphs 19 and 20. Any expenses associated with the trainings required by Paragraphs 19 and 20 shall be paid by Defendant RedSail. |

## V. COMPENSATION TO AGGRIEVED SERVICEMEMBER

22. Defendant RedSail has provided the United States with a spreadsheet of lease terminations from June 1, 2018, to the present, as well as copies of documents in the tenant files of servicemembers or servicemembers' dependents who terminated their leases from June 1, 2018, to the present. A U.S. Navy Fire Controlman Petty Officer First Class who terminated his lease at the Arrington Street Home pursuant to Section 3955 of the SCRA in April 2022 ("the Aggrieved Servicemember") is likely the only servicemember upon whom RedSail imposed the VRLTA's 35-mile limitation and against whom it obtained unlawful terminations fees and additional rent, in violation of Section 3955 of the SCRA.

23. Within seven (7) calendar days of the entry of this Consent Order, Defendant RedSail shall notify the Aggrieved Servicemember of this Consent Order and send him the Declaration and Release at Exhibits B and C. Defendant RedSail shall inform him that he is due $10,225.65 in damages from the Consent Order, which includes the $3,408.55 in unlawful termination fees and additional rent he paid RedSail, plus two times the unlawful fees and additional rent assessed, if he signs and returns the Declaration and Release. Defendant RedSail shall include instructions to send the signed Declaration and Release to counsel for Defendant RedSail and provide a postage prepaid envelope addressed to counsel for Defendant RedSail.

24. Within fourteen (14) calendar days of receiving the Aggrieved Servicemember's executed Declaration and Release, Defendant RedSail shall pay $10,225.65 by mailing a check payable to him. Defendant RedSail shall, if necessary, attempt to redeliver any check that is returned as undeliverable.

25. Pursuant to 5 U.S.C. § 552a(b)(11), the United States is authorized to release information about the Aggrieved Servicemember to Defendant RedSail for purposes of effectuating the relief in this Consent Order.

26. Defendant RedSail shall not be entitled to a set-off, or any other reduction, of the amount of compensation payment required by this Consent Order because of any amounts owed by the Aggrieved Servicemember to Defendant RedSail and will not refuse to make payment based on a waiver or release of legal claims or arbitration agreement previously signed by him.

27. The Aggrieved Servicemember may not obtain review by the Parties of the payment disbursed pursuant to Paragraphs 22-26.

## VI. CREDIT REPAIR AND OTHER RELIEF

28. Within thirty (30) calendar days of the entry of this Consent Order Defendant RedSail shall:

    a. move to set aside any judgment it may have obtained to enforce payment of rent concession chargebacks, other termination fees, and additional rent assessed in violation of 50 U.S.C. § 3955 against the Aggrieved Servicemember, and promptly notify the United States if any court declines to set aside a judgment; and

    b. request that all three (3) major credit bureaus and any other databases to which Defendant RedSail reports delete any trade lines associated with any amounts arising from rent concession chargebacks, other termination fees, and additional rent assessed against the Aggrieved Servicemember in violation of 50 U.S.C. § 3955.

29. Defendant RedSail shall employ commercially reasonable efforts to comply with the requirements set forth in Paragraph 28.

## VII. CIVIL PENALTY

30. Within thirty (30) calendar days of the entry of this Consent Order, Defendant RedSail shall pay a penalty of Three Thousand Dollars ($3,000) to the United States Treasury pursuant to 50 U.S.C. § 4041(b)(3) and 28 C.F.R. § 85.5. The payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

## VIII. ADDITIONAL REPORTING, RECORDS PRODUCTION, AND RECORD-KEEPING REQUIREMENTS

31. For the duration of this Consent Order, Defendant RedSail and Defendant Gorman shall retain all records relating to their obligations hereunder and all records relating to compliance activities as set forth herein. The United States shall have the right to review and copy any such records, including electronic data, upon reasonable request during the term of this Consent Order.

32. Every six (6) months during the term of this Consent Order, Defendant RedSail shall notify counsel for the United States in writing of receipt of any SCRA complaint or complaint that reasonably implicates the SCRA. Defendant RedSail shall provide a copy of any written SCRA-related complaints with the notifications. Defendant RedSail will incorporate into its SCRA Policies and Procedures a requirement that all customer service personnel, upon receiving any oral SCRA complaint, shall notify individuals designated and trained to receive SCRA complaints pursuant to Paragraph 15. In the case of both written and oral SCRA complaints, the notification to the United States shall include the full details of the complaint, including the complainant's name, address, electronic mail address, and telephone number, and the full details of all actions Defendant RedSail took to resolve the complaint. Defendant RedSail shall also promptly provide the United States

all information it may request concerning any such complaint. If the United States raises any objections to Defendant RedSail's actions, Defendant RedSail and the United States shall meet and confer to consider appropriate steps to address the concerns raised by the United States' review. If Defendant RedSail and the United States are unable to come to an agreement regarding such objections or concerns, either Party may bring the dispute to this Court for resolution.

33. Within fourteen (14) calendar days of receipt by Defendant Gorman, his agents (including Defendant RedSail and any other property management companies retained to manage rental properties he owns), employees, representatives (including attorneys, contractors, and vendors), co-owners, or family members, of an SCRA complaint or a complaint that reasonably implicates the SCRA, Defendant Gorman shall notify counsel for the United States in writing of receipt of the complaint.

## IX. SCOPE OF CONSENT ORDER

34. Defendant RedSail's obligations under this Consent Order shall apply to Defendant RedSail and any subsidiaries, predecessors, acquired companies, or successor entities. They shall also apply to the officers, employees, agents, representatives, assigns, successors-in-interest, and all persons and entities in active concert or participation with Defendant RedSail.

35. In the event that Defendant RedSail is acquired by or merges with another entity, Defendant RedSail shall, as a condition of such acquisition or merger, obtain the written agreement of the acquiring or surviving entity to be bound by any of Defendant RedSail's obligations remaining under this Consent Order for the remaining term of this Consent Order.

36. Defendant Gorman's obligations under this Consent Order shall apply to Defendant Gorman, his agents (including Defendant RedSail and any other property management

13

        companies retained to manage rental properties he owns), employees, representatives (including attorneys, contractors, and vendors), co-owners, or family members involved in the management of rental properties Defendant Gorman owns.

37. In exchange for the consideration set forth herein, this Consent Order releases the United States' claims for violations of Section 3955 of the SCRA by Defendant RedSail and Defendant Gorman between June 1, 2018, and the date on which this Consent Order is entered by the Court.

38. Nothing in this Consent Order will excuse compliance by Defendant RedSail or Defendant Gorman with any currently or subsequently effective provision of law or order of a regulator with authority over the Defendants that imposes additional obligations on them.

## X. LITIGATION HOLD

39. The Parties agree that, as of the entry of this Consent Order, litigation is not anticipated concerning the matters described in the United States' Complaint. To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the Party is no longer required to maintain such litigation hold. Nothing in this paragraph relieves any Party of any other obligations imposed by this Consent Order, including the recordkeeping and retention requirements contained in Paragraphs 31-33.

## XI. MODIFICATIONS, ATTORNEYS' FEES AND COSTS, AND REMEDIES FOR NON-COMPLIANCE

40. Any term of this Consent Order, including time limits, may be modified only with the written consent of the United States and of Defendant RedSail, if the modification affects only an obligation of Defendant RedSail. If the modification affects an obligation of only Defendant Gorman, then the written consent of Defendant Gorman and the United States

is required. If the modification affects obligations of both Defendants, then the written consent of all Parties is required.

41. Each Party shall bear its own legal and other costs incurred in connection with this litigation, including the preparation and performance of this Order, except as set forth in Paragraph 42.

42. The Parties shall endeavor in good faith to resolve informally any differences regarding the interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by a Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Consent Order or otherwise comply with any provision thereof, the United States may move the Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring the performance of such act or deeming such act to have been performed, and an award of any damages, costs, and/or attorneys' fees that the United States may have incurred as a result of that Defendant's violation or failure to perform.

## XII.  RETENTION OF JURISDICTION AND OTHER TERMS

43. The United States may review compliance with this Consent Order at any time during the term of the Consent Order. The Defendants agree to cooperate with the United States in any review of compliance with this Consent Order. Upon reasonable notice, the Defendants shall permit counsel for the United States to inspect and copy all non-privileged records pertinent to this Consent Order, during ordinary business hours and at the cost and expense of the Defendant involved.

44. The undersigned represent and warrant that they are fully authorized to execute this Consent Order on behalf of the entities indicated below.

45. The Court shall retain jurisdiction and venue over all disputes between and among the Parties arising out of the Order, including but not limited to interpretation and enforcement of the terms of the Consent Order.

46. This Consent Order shall be in effect for a period of three (3) years from its date of entry, after which time the Complaint shall be dismissed with prejudice. Either Party may move the Court to extend the duration of this Order in the interests of justice; provided, however, that the Parties will meet and confer in a good faith effort to resolve any perceived need to extend the duration of this Order before the moving Party seeks such relief.

IT IS SO **ORDERED**, THIS 9th DAY OF JANUARY, 2024.

/s/
Jamar K. Walker
United States District Judge